**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Kuiper Ventures LLC, | |
| Plaintiff, | Case No. 25-cv-14396 |
| v. | JURY TRIAL DEMANDED |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A, | Dist. Judge John F. Kness |
| | Mag. Judge Heather K. McShain |
| Defendants | |

**_EX PARTE_ MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER,
INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET
RESTRAINT, AND EXPEDITED DISCOVERY**

Kuiper Ventures LLC, by

Jonathan L.A. Phillips (IL6302752)
**Phillips & Bathke, P.C.**
300 Northeast Perry Avenue
Peoria, Illinois 61603
(309) 834-2296
jlap@pb-iplaw.com

**Table of Contents**

I. Introduction ..................................................................................................1
II. Prefatory Statement: This Case Is Not a Schedule
A Case Like *Eicher Motors* ........................................................................ 2
III. Statement of Facts ...................................................................................... 3
   A. Plaintiff's Patent Rights ...................................................................... 3
   B. Defendants' Infringement ................................................................... 4
IV. Argument ..................................................................................................... 5
   A. Applicable Legal Standards................................................................. 5
      1. Likelihood of Success on Patent Infringement Claims........................... 6
      2. Standards on Remaining Factors ......................................................... 6
   B. This Court has Personal Jurisdiction over the Defendants........................ 7
   C. Plaintiff Is Likely to Succeed on the Merits ...................................... 8
   D. Plaintiff Will Suffer Immediate and Irreparable
      Harm Without Injunctive Relief ........................................................ 9
     1. Injunctive Relief Is Necessary to Prevent Ongoing
       Infringing Activities ........................................................................... 9
     2. An Asset Restraint Is Necessary to Prevent Irreparable
       Harm and Preserve This Court's Ability to Provide Relief........................ 11
   E. The Balance of Harms Favors Plaintiff....................................................13
   F. A TRO Will Not Harm the Public ................................................................14
   G. The *Ex Parte* Relief Is Necessary ........................................................14
   H. Plaintiff is Entitled to Expedited Discovery ............................................14
   I. A Bond Should Be Set at $8,000 to Secure the Injunctive Relief ..............15
V. Conclusion.................................................................................................15

## I. Introduction

Defendant's infringement forces Plaintiff to seek injunctive relief on an *ex parte* basis to stop infringement, prevent fraudulent transfer of assets, and to allow for limited early discovery to advance the case. Despite Plaintiff's efforts to have the platforms, Temu and Amazon, remove the infringing products, it was required to file this, and other, suits. The Patent Act's joinder rules are stricter than the Federal Rules, so this action is one of several Plaintiff has filed to protect its patent rights.

The Defendants named in Schedule A are Chinese entities infringing Plaintiff's patent through online sales on Amazon and Temu. They import, sell, and offer products for sale that violate Plaintiff's registered U.S. patent. Operating under the aliases listed in Schedule A, they target Illinois consumers through their ecommerce operations.

Online anonymity and international borders allow the Defendants to avoid accountability. By either shipping inventory into the United States in advance, distributing through third-party marketplaces, or drop-shipping, they frustrate enforcement efforts.

This lawsuit seeks to stop the rampant infringement. The requested injunctive relief stops the infringement until a preliminary injunction can be sought and, eventually, a ruling on the merits. The temporary restraining order sought here preserves the Court's ability to render meaningful relief. Without the TRO, Plaintiff will suffer irreparable harm. Otherwise, the motion seeks early discovery necessary to advance the case.

Without the relief sought in this motion, as courts in this district often agree, Defendants are likely to stop operating under one set of aliases and appear under

another while, simultaneously, moving assets to offshore bank accounts. *See, Square One Entm't Inc. v. P'ships & Unincorporated Ass'n Identified in Schedule "A,"* No. 20 C 5685, 2021 U.S. Dist. LEXIS 65710, at *2 (N.D. Ill. Apr. 5, 2021).

Plaintiff respectfully requests that the Court issue an *ex parte* temporary restraining order to halt Defendant's ongoing unlawful conduct, effectuate an asset freeze, and to allow for early, limited discovery.

## II. Prefatory Statement: This Case Is Not a Schedule A Case Like *Eicher Motors*

This case differs from this Court's recent decision in *Eicher Motors, Ltd. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 2025 U.S. Dist. LEXIS 153243, 794 F. Supp. 3d 543 (N.D. Ill. Aug. 8, 2025). It does not tread the same "well-worn path" that concerned the Court there. *Id.* at *1.

Plaintiff filed eight separate complaints—grouping defendants only when the evidence supported doing so and proceeding individually when it did not. Exhibit 2, ¶ 3. This is not a mass joinder matter. *Eicher Motors*, 2025 U.S. Dist. LEXIS 153243, at *27. Plaintiff investigated storefronts, import records, bills of lading, and trademark office records. It confirmed, with as much certainty as possible from outside China, that all defendants operate there. Exhibit 2, ¶ 3. The identities and addresses come from the defendants' own listings and import records. Exhibit 2, ¶¶ 13, 19, 27, 33, 41, 47, 53, 60, 64, 65.

And this case does not rest on "numerous similarities" among unrelated defendants. *Eicher Motors*, 2025 U.S. Dist. LEXIS 153243, at *8. The evidence shows a coordinated ███████████████████████████████████████████ ███████████████████████████████████. Exhibit 2, ¶¶ 62-66. The investigation details are

not generalized. Forty-five pages of declaration address each of the eight defendants: their products, the infringing nature of those products, estimated sales (for some), identities, and locations. Exhibit 2. The record, while admittedly one-sided, is hardly "sparse." *Eicher Motors*, 2025 U.S. Dist. LEXIS 153243, at *23.

This case also seeks equitable relief—disgorgement under 35 U.S.C. § 289—not just actual or statutory damages or a later equitable accounting. Cf. *Eicher Motors*, 2025 U.S. Dist. LEXIS 153243, at *20. And it raises no concerns about alternative service for U.S.-based infringers. All defendants are in China. Nor should there be concerns about overreaching asset restraints. *Id*. at *25. Plaintiff commits to two safeguards: (1) examining platform-reported sales of infringing products and, when seeking a preliminary injunction, limiting the freeze to the scope of a potential award; and (2) if a defendant requests a modified asset restraint before then, negotiating and submitting an agreed order to limit the restraint to an amount within the scope of a potential award. Exhibit 3. The requisite Rule 65(b) certification by counsel is included. Cf. *Eicher Motors*, 2025 U.S. Dist. LEXIS 153243, at *11.

Plaintiff has done the work—investigating, particularizing, and avoiding the pitfalls that turn Schedule A litigation into an abuse of the Federal Rules or a due-process violation.

### III. Statement of Facts

A. <u>Plaintiff's Patent Rights</u>

Plaintiff, Kuiper Ventures LLC, is a Wyoming limited liability company. It is the owner of a design patent ████████████████████████████ (the "Patent"). Exhibit 1. Plaintiff sells products embodying the design protected by the Patent to

3

consumers on the internet. Exhibit 2, ¶¶ 1-3. The Patent was and is valid at all times relevant to this case. It is entitled to a presumption of validity under 35 U.S.C. § 282.

  B.  Defendants' Infringement

Plaintiff's Patent covers a product design whose ornamental features have been proven to be wildly popular. As a result, they have been widely infringed. Exhibit 2, ¶¶ 6. As a result, others, like Defendants in this and other cases, have been making, offering to sell, selling, and importing products that infringe Plaintiff's Patent. Exhibit 2, *generally*. As a result, Plaintiff has monitored the internet for suspicious listings of infringing products and investigating the sellers. Exhibit 2, ¶¶ 4-7. Since these infringers entered the market, infringers offer infringing products at significantly lower cost with listings appearing before Plaintiffs. *Id*. at ¶ 6.

Recently, Plaintiff uncovered numerous infringing storefronts on Amazon, Temu, and other platforms. *Id*. For the eight Defendants here, its owner undertook a detailed investigation on the platforms in question, using maps, import records, and third-party sales analytics platforms. *Id*. at ¶ 7. And, as explained above, Mr. Jermolenko's Declaration contains the identity of each Defendant, their address, listing images, comparisons to Plaintiff's patent rights and explanation of the infringing nature of the products offered by each Defendant, confirmation of shipping to Illinois, and, for those on Amazon, sales analytics. Exhibit 2, pp. 3-48. Identities, addresses, and listing images are all provided with the Verified Complaint as the attached Schedule A and Exhibit 2. Undersigned counsel has also confirmed that at least one Defendant completed a order to ship infringing goods into Chicago. Exhibit 3.

Plaintiff has no intention of engaging into mass-joinder, and is only grouping those with true relationships. Exhibit 2, ¶ 3. That is why it has filed eight separate suits,

some with small groups and some with individuals. Exhibit 3. Here, Plaintiff compared these Defendants, researched their supplier and manufacturing relationships, sought out patterns in corporate identity, addresses, and logistics data (not just similar look and feel in listings). Exhibit 2, ¶ 62. He determined that these Defendants are part of a coordinated manufacturing enterprise ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████. *Id.* at 62-66.

### IV. Argument

#### A. Applicable Legal Standards

Courts may enjoin patent violations. 35 U.S.C. § 283. The right to exclude is the patent's core value. *Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude"). A preliminary injunction preserves the status quo while the case proceeds. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (*citing Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

This District applies the same standard to temporary restraining orders and preliminary injunctions. *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020); *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). A Court grants a temporary restraining order when four factors support it:

(1) likelihood of success on the merits;
(2) irreparable harm without relief;
(3) balance of hardships favoring the movant; and
(4) public interest supporting the injunction.

*Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Abbott Labs.*, 500 F.

Supp. 2d at 815-16. The stronger the likelihood of success on the merits, the less the balance of hardships must favor plaintiff. *EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 843 (N.D. Ill. 2011).

    1.  *Likelihood of Success on Patent Infringement Claims*

  To succeed on a patent infringement claim, plaintiff must show probable infringement and patent validity. *Titan Tire*, 566 F.3d at 1376. Patents carry a presumption of validity that applies before and during trial. *Id*. at 1376-77. In design patent cases, showing a likelihood of success requires showing infringement of the asserted claims. *Ningbo Ningshing Ubay Supply Chain Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 15775, 2024 U.S. Dist. LEXIS 170167, at *3 (N.D. Ill. Sep. 20, 2024) (*quoting ABC Corp. v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022)).

    2.  *Standards on Remaining Factors*

  Irreparable harm means injury that money damages cannot cure. *H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (*citing Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores, Inc*., 735 F.3d 735, 740 (7th Cir. 2013)). Lost customers, market share, goodwill, and reputation establish irreparable harm when damages cannot be calculated precisely. *Life Spine v. Aegis Spine, Inc.,* 8 F.4th 531, 545 (7th Cir. 2021). Loss of market share, price erosion, damage to reputation, and loss of goodwill are often difficult to quantify and may justify injunctive relief. *Henkel Corp. v. Coral, Inc*., 754 F. Supp. 1280, 1308-09 (N.D. Ill. 1991).

  The Supreme Court rejected automatic presumptions of irreparable harm in patent cases. *eBay v. MercExchange, LLC,* 547 U.S. 388 (2006). But this does not

"swing the pendulum in the opposite direction." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011). The "right to exclude alone cannot justify an injunction," but "it should not be ignored either." *Id.*

The balance of hardships weighs potential harm to defendant against harm to plaintiff if relief is denied. *Ty v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Court weighs these factors "sitting as would a chancellor in equity." *Id.* (*quoting Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992))).

B.    This Court has Personal Jurisdiction over the Defendants

Defendants sell infringing products into this District. Courts routinely exercise jurisdiction over websites targeting Illinois. Establishing an online store on a platform and stating a willingness to ship goods to Illinois is enough to show purposeful availment. *NBA Props. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022). Even a single test buy can demonstrate that jurisdiction is appropriate. *Id.* at 624-25. By "structure[ing] its sales activity in such a manner as to invite orders from Illinois and develop[ing] the capacity to fill them," Defendant has submitted to this Court's jurisdiction. *Id.*

This case involves those very sales—orders of infringing goods—making jurisdiction sufficiently related to the claims. Exhibit 2; Exhibit 3; *see also,* Exhibit 2 to Verified Complaint. And exercising jurisdiction is not unfair. It is not unfair to require a defendant shipping infringing goods to "defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id.* at 627 (*quoting uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 423 (7th Cir. 2010)).

C. <u>Plaintiff Is Likely to Succeed on the Merits</u>

Plaintiff asserts patent infringement. The claim requires a valid patent and infringement. *Titan Tire*, 566 F.3d at 1376. Plaintiff's Patent carries a presumption of validity. 35 U.S.C. § 282. This satisfies the first element.

As to the second, a patent is infringed when "the patented design, or any colorable imitation thereof" is applied to "any article of manufacture for the purpose of sale...." 35 U.S.C. § 289. Courts in this Circuit apply the "ordinary observer" test to design patent claims. Infringement occurs when, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Top Brand LLC v. Cozy Comfort Co. LLC*, No. 20 C 1238, 2021 U.S. Dist. LEXIS 55765, at *17 (N.D. Ill. Mar. 24, 2021) (*quoting Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)).

The Patent protects ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. <u>Exhibit 1</u>. Plaintiff's owner explains how each defendant's product infringes, with pictures from each defendant's listing. <u>Exhibit 2</u>, ¶¶ 11, 17, 24, 31, 39, 45, 51, 58. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ The infringing product need not be identical to the patented design. *Competitive Edge Inc.*, 763 F. Supp. 2d at 1012. An ordinary observer would believe the infringing products in <u>Exhibit 2</u>, here, and <u>Exhibit 2</u> to the Verified Complaint are the same as those covered by the Patent.

The record is hardly sparse. Given the listing images and the Patent, defendants would have little to legitimately dispute legitimately, even with adversarial briefing. *Cf.*

8

*Eicher Motors*, at *22-23. Each of their listing images compared against the Patent prove the case.

    D.    <u>Plaintiff Will Suffer Immediate and Irreparable Harm Without Injunctive Relief</u>

As for the second element of the analysis, the Court must determine whether Plaintiff will suffer irreparable harm absent the requested relief. Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment" including harms where a damages award would be "seriously deficient." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984).

    1.    *Injunctive Relief Is Necessary to Prevent Ongoing Infringing Activities*

The Patent Act empowers courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The most fundamental right of a patent is the right to exclude others. *See Sanofi-Synthelabo*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude"). Should this Court not enjoin the Defendants, this right is rendered meaningless.

Moreover, design patents are time limited to fifteen years. Allowing ongoing infringement during this limited period is harm for which Plaintiff cannot be adequately compensated. Even so, the loss of exclusivity is not remote or in the abstract, it is directly connected to other harms that cannot be remedied by law.

"[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 U.S. Dist. LEXIS 212406, at *8-9 (N.D. Ill. Nov. 23, 2022) (quoting *Life Spine Inc.,* 8 F.4th

9

at 546. Applying the Seventh Circuit's *Life Spine* opinion, the *Antsy Labs* court explained that difficulties in identifying lost business can transform market share losses to irreparable harm. *Id.* Applying that principle to internet stores infringing intellectual property rights, the district court correctly concluded that customers in that situation are "unquantifiable and not easily identified" and denied a motion to dissolve an injunction. *Id.*

Similarly, price erosion and loss of business opportunities are also reasons to find irreparable harm. *Celsis in Vitro, Inc., v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Finally, loss of market share is an irreparable harm. *Abbott Laboratories*, 500 F. Supp. 2d at 843; *Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006).

Here, Defendants are online sellers, selling to unknown customers, in unknown quantities. Harm suffered by Plaintiff is unquantifiable for that reason, but it is obvious that business opportunities are lost. Plaintiff is forced to sell its protected products on the same platforms against direct infringer-competitors offering infringing products, here the Defendants. Exhibit 2. Often times, those infringing, lower cost products appear in listings before Plaintiff's. Exhibit 2, ¶ 6. On ecommerce platforms, often known for cut-rate pricing, price erosion is a reality. Plaintiff is suffering lost revenue and profits. *Id.*

Ecommerce for consumer goods is highly competitive. Customers on ecommerce platforms have multitudes of products to consider. This supports a finding of irreparable harm when some of Plaintiff's direct competitors on those platforms are infringing its Patent. *See LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 832 (Fed. Cir. 2020) (finding irreparable harm in a competitive marketplace with infringing products).

10

Additionally, lost sales compound. When Defendants steal a customer's first purchase, Plaintiff loses that customer's future replacement orders or orders of other products. The damage multiplies through online marketplaces, where customer reviews, influencer referrals, and word-of-mouth drive sales. Each sale to a direct competitor infringing on Plaintiff's Patent denies Plaintiff the chance to build its reputation and reach new customers.

This creates cascading harm: Lost customers lead to lost referrals, which shrink market share. *See generally Robert Bosch LLC*, 659 F.3d at 1154 (considering loss of access to potential customers as evidence of irreparable harm). Defendant's infringement erodes Plaintiff's market position with every sale: Irreparable harm is occurring and a TRO is necessary to prevent further infringement.

    2.    *An Asset Restraint Is Necessary to Prevent Irreparable Harm and Preserve This Court's Ability to Provide Relief*

"[D]istrict courts often agree[] that it is necessary to restrain the defendants' assets without notice in order to prevent them from removing their assets from the United States or otherwise hiding them." *Square One Entm't Inc.*, 2021 U.S. Dist. LEXIS 65710, at *2; *See also, In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1259 (7th Cir. 1980) (determining federal courts can restrain removal of assets from U.S.). Even so, district courts generally lack the ability to restrain assets when a plaintiff seeks a money judgment. *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, *2 (N.D. Ill. Oct. 31, 2013). There is, however, an exception where plaintiffs seek an equitable remedy, including disgorgement of profits. *Id.*; *CSC Holdings, Inc. v. Redisi,* 309 F. 3d 988, 996 (7th Cir. 2002). Here, Plaintiff seeks a disgorgement of profits as allowed by 35 U.S.C. § 289.

11

Moreover, Defendants have all reported to the platform they are on that they are located in China, confirmed by import/export records. Plaintiff has already excluded U.S.-based infringers from this suit. While assets are presently within reach of this Court, if Defendants are able to transfer them to offshore bank accounts, especially Chinese ones, the Court will have no ability to effectuate the equitable relief sought, disgorgement of profits. Irreparable harm exists where damages are inadequate and a damages award is inadequate if they are "unobtainable from the defendant." *Roland Machinery Co.*, 749 F.2d at 386.

These sorts of factors and the situation at hand, like a degree of anonymity afforded by platforms and lack of readily apparent domestic assets, have been significant in determining irreparable harm to patent owners. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021) (citing *Robert Bosch LLC*, 659 F.3d at 1155-56). If these Defendants even learn about this case before interim relief is entered, they are likely to make meaningful recovery impossible. *See, e.g., Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (finding the ability to collect from foreign defendants with few to no assets in the U.S. favors a finding of irreparable harm).

These courts, and others in this district, often grant temporary restraining orders in similar situations. *See, e.g., Deckers Outdoor Corp.*, 2013 U.S. Dist. LEXIS 205985, *2.; *PINK FLOYD (1987) Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Civil Action No. 1:21-cv-04406, 2021 U.S. Dist. LEXIS 254393 (N.D. Ill. Oct. 21, 2021). The same facts and considerations apply here. As such, an asset restraint is imminently appropriate.

Infringement is rampant and a real problem. *Eicher Motors,* at *27-28. That said, Plaintiff is not blind to the possibility of an overbroad or indiscriminate asset restraints. <u>Exhibit 3</u>. Even so, with the handful of infringers Plaintiff has sued in its eight cases. It has not brought cases against less prolific infringers. Even so, should Plaintiff learn from this platform, or any other, that damages available from the amount of sales of infringing goods are not commiserate with the amount restrained, Plaintiff will seek a reduced restraint at the time it moves for a preliminary injunction to correspond to available damage models, i.e., lost profits, $250 per infringement, or a reasonably royalty, combined with willfulness. <u>Exhibit 3</u>.

E. <u>The Balance of Harms Favors Plaintiff</u>

Courts weigh "[t]he magnitude of the threatened injury to the patent owner…in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987) (overturned on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995)). Plaintiff has shown strong likelihood of success. The balance need only tip slightly in Plaintiff's favor. But it tips decisively.

Defendant faces no cognizable hardship. Any harm they suffer flows from their own infringement. *See Bulgari S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14-cv-4819, 2014 U.S. Dist. LEXIS 107218, at *21 (N.D. Ill. July 18, 2014). Courts do not and should not credit self-inflicted wounds. Meanwhile, Plaintiff faces immediate, irreparable injury without relief. The balance strongly favors Plaintiff.

F.     <u>A TRO Will Not Harm the Public</u>

The public interest favors enforcement of patent rights. *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). The question becomes "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998).

None exists here. The framers of the Constitution provided a time limited monopoly to incentivize invention. U.S. Const. art. I, § 8, cl. 8. The public benefits from a functioning patent system and fair business practices. *See PPG Indus.*, 75 F.3d at 1567. An injunction serves both interests. It harms neither.

G.     <u>The *Ex Parte* Relief Is Necessary</u>

Cases against infringers of infringing goods "are often useless if notice is given to the infringers." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996). Courts often provide *ex parte* relieve in Schedule A cases like this one. The same reasons apply here. With notice, Defendants are likely to remove assets from the U.S. or hide them. *Square One Ent. Inc.*, 2021 U.S. Dist. LEXIS 65710, at *2.

H.     <u>Plaintiff is Entitled to Expedited Discovery</u>

Federal courts possess inherent power to order discovery of facts necessary to find out their competency to entertain the merits. *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts exercise wide latitude in granting discovery requests. *Id.* (citation omitted). They may permit discovery to identify unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Without expedited discovery, Plaintiff cannot get any meaningful relief. Here, Plaintiff seeks information sufficient to confirm the identities and locations of

14

Defendants. Plaintiff also seeks expedited discovery of Defendant's bank and payment accounts as well. This is well withing the Court's broad discretionary power over discovery. *See* Fed R. Civ. P. 26(b)(2). Without this discovery, asset restraints become meaningless. Defendants can simply move funds beyond reach. Expedited discovery prevents this evasion. Finally, Plaintiff seeks to learn how many infringing products were sold, so the asset restraint can be tailored. *Supra*.

Courts in this district consider expedited discovery requests based on the record and the reasonableness of the request. Reasonableness is connected to whether a preliminary injunction is pending, the breadth of the request, the timing, and the burden on the defendant. *Ibarra v. City of Chicago,* 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011). This request is prompt. It is not burdensome on Defendants. And it is narrowly tailored to what is necessary to effectuate relief in this case.

I. A Bond Should Be Set at $8,000 to Secure the Injunctive Relief

The amount of a bond upon issuing a TRO or preliminary injunction is committed to the Court's sound discretion. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1141 (7th Cir. 1994). Strong evidence of infringement justifies minimal security, here. And Plaintiff's commitment to adjusting any restraint to minimize disruption further supports lower security. So, Plaintiff requests a bond not exceeding $8,000, or $1,000 per Defendant. Other courts have set bonds at $10,000 for dozens or hundreds of defendants.

V. Conclusion

In view of these facts, and consistent with similar cases, Plaintiff requests this Court enter a temporary restraining order.

Respectfully submitted,
Kuiper Ventures LLC, by

s/ Jonathan L.A. Phillips
Jonathan L.A. Phillips (IL6302752)
**Phillips & Bathke, P.C.**
300 Northeast Perry Avenue
Peoria, Illinois 61603
(309) 834-2296
jlap@pb-iplaw.com