**Declaration**

Undersigned certifies and states:

1.      My name is Jonathan Lucas Allen Phillips. I am an attorney and I was retained by the Plaintiff to bring and maintain this case against infringers of its intellectual property rights.

2.      My primary practice area is intellectual property litigation, and I am familiar with "Schedule A" cases.

3.      That said, the majority of my Schedule A work has been defending against these sorts of cases. In fact, I have appeared before this Court defending just such a case: Appearance, Doc. 385, *Weifang Tengyi Jewelry Trading Co. Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 18-cv-4651 (filed Sept. 20, 2022).

4.      Candidly, I share many of the concerns reflected in this Court's opinion in *Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 794 F. Supp. 3d 543 (N.D. Ill. Aug. 8th 2025) (Kness, J.). Accordingly, before bringing this case and others filed around the same time, I reviewed our client's investigation process and its results. I also sought to ensure joinder was appropriate in this case and developed a process in which the Court's authority would not be overleveraged.

5.      Even so, in the eight cases recently brought by my client, we have filed against small groups (all eight or less) only when the facts demonstrate a sufficient bases to do so under the Patent Act's more stringent joinder requirements. Otherwise, defendants were sued on an individual basis.

6.      I ordered an infringing product from one of the Defendants in this particular group, on the Amazon platform. I set the shipping address for Chicago. Payment was

successfully taken and the order successfully submitted. The infringing product was delivered to an address in Chicago.

7.      Under Federal Rule of Civil Procedure 65(B)(a)(B), no efforts have been made to give notice to the Defendants here.

8.      Generally, all my clients wish to limit exposure. I believe this is true of all businesses.

9.      Having defended Schedule A cases and other intellectual property cases, both for U.S.-based and foreign defendants, I know that foreign defendants enjoy the ability to move assets offshore and, in doing so, render themselves immune from any consequences for infringing activities.

10.     I am also aware of my Firm's transactions with Chinese-based clients and the difficulties associated with securing funds even when someone is legitimately trying to send them to pay for legal fees. In fact, even if a Chinese-based individual and bank wants to send funds to the U.S., they cannot send over $50,000 without government approval. Harris, D., *Getting Money Out of China: the Long Version*, Harris Sliwoski (Sept. 24, 2025) (available at https://harris-sliwoski.com/chinalawblog/getting-money-out-of-china-the-long-version/); *see also* Chen, L., *China's rich are using total strangers to sneak cash out of the country*, The Sydney Morning Herald (Nov. 14, 2023) (describing so-called hawala system with thirty per cent markups to avoid Chinese capital controls).

11.     Under Federal Rule of Civil Procedure 65(B)(1)(B), in my opinion, based on the forgoing, if notice was provided to these Defendants, then there is the real chance that they will do what they can to limit their exposure, as any business would. And given the tools at their disposal, they would likely move assets from the U.S. into Chinese banks.

2

Doing so would effectively render this Court unable to provide the equitable remedy of disgorgement.

12.     I am committed to ensuring that asset restraints are not over-leveraged, here. Again, I share the Court's concerns and have been on the wrongfully sued defendant's side, where my client had a crippled store and assets frozen. While we secured positive results for those clients, it was not without real impact and stress on them.

13.     Here, my client has not sued infringers that seem to have lower or insignificant sales. The damages available for design patent infringement is (presumably the greater of) actual damages, disgorgement of profits, or statutory damages of $250. Should the Court grant the sought early discovery, then Plaintiff will be able to learn of the number of infringing sales. From that, the scope of damages can be ascertained.

14.     Upon moving for a preliminary injunction after entry of the TRO, Plaintiff will voluntarily seek adjustment of any restraint to correspond to the recoverable scope of damages.

15.     If a defendant contacts me and proposes a modified asset restraint corresponding to the recoverable scope of damages, Plaintiff will negotiate in good faith to reach agreement for a potential agreed order modifying the asset restraint.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2025                    s/ Jonathan L.A. Phillips
                                                Jonathan L.A. Phillips